IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CESAR BARROS,                    :        CIVIL ACTION
                                 :        NO. 07-1300
            Petitioner,          :
                                 :
       v.                        :
                                 :
JEFFREY BEARD,                   :
                                 :
            Respondent.          :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        SEPTEMBER 4, 2009

        Petitioner Cesar Xaver Barros, filed this habeas corpus
petition under 28 U.S.C. § 2254, collaterally attacking his
sentence and asking the Court to vacate, set aside, or correct
it.  Petitioner alleges he was denied effective assistance of
trial counsel, in violation of his Sixth Amendment rights.

        For the following reasons, Petitioner's § 2254 motion,
will be denied.


I.  PROCEDURAL HISTORY

        On November 3, 2000, Petitioner was convicted of third
degree murder and possession of a firearm without a license.  On
December 19, 2000, Petitioner was sentenced to 21 to 45 years
incarceration for the murder charge and a consecutive one to five
years incarceration for the firearm violation.

        The Pennsylvania Superior Court affirmed the judgment

of conviction and sentence and the Pennsylvania Supreme Court denied the petition for allowance of appeal.  Petitioner filed a timely petition for collateral relief under the Post Conviction Relief Act ("PCRA"), which the PCRA court denied.  The Pennsylvania Superior Court affirmed the denial and the Pennsylvania Supreme Court denied the petition for allowance of appeal.  Petitioner then filed the instant habeas petition, pursuant to 28 U.S.C. § 2254, alleging ineffective assistance of counsel. (Doc. no. 1).  The Court referred the case to United States Federal Magistrate Judge Caracappa for a report and recommendation.

On February 28, 2008, Magistrate Judge Caracappa issued a report and recommendation, recommending that Petitioner's case be dismissed for failure to exhaust administrative remedies at the state level.  Petitioner objected to the report and recommendation, arguing that his administrative remedies were in fact exhausted.  The Court sustained Petitioner's objection, found the petition to be properly exhausted, and remanded the case to Magistrate Judge Caracappa for consideration on the merits of the petition.

On March 27, 2009, in a well reasoned report and recommendation, Magistrate Judge Caracappa reviewed and denied each of Petitioner's ineffective assistance of counsel arguments (doc. no. 20).  Petitioner filed three objections to the report

-2-

and recommendation, challenging each of Magistrate Judge
Caracappa's findings (doc. no. 21).  Respondent filed responses
thereto (doc. no. 23).  Petitioner's habeas claims and objections
to the report and recommendation are now ripe for decision.


II.  ANALYSIS

        The Antiterrorism and Effective Death Penalty Act
("AEDPA") sets forth the standards for reviewing state court
judgments in federal habeas petitions filed pursuant to 28 U.S.C.
§ 2254.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).  The
AEDPA increases the deference federal courts must give to the
factual findings and legal determinations of state courts.  Id.
at 196 (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.
1996)).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief
may be granted only when the state court's decision is "contrary
to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States," or when the state court's decision is an
"unreasonable determination of the facts" based on the evidence
adduced at trial.  28 U.S.C. § 2254(d)(1)-(2); Williams v.
Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203,
210 (3d Cir. 2001).

        The "clearly established Federal law" that governs
ineffective assistance of counsel claims is the two-pronged

-3-

standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668
(1984).  <u>Williams</u>, 529 U.S. at 363 (stating that the "<u>Strickland</u>
test qualifies as 'clearly established Federal law, as determined
by the Supreme Court'").  In order to prevail upon an ineffective
assistance of counsel argument, a petitioner must meet the two-
pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668
(1984).  First, petitioner must show that his counsel's
performance was deficient.  <u>Id.</u> at 687.  This requires a showing
that counsel made errors so serious that counsel was not
functioning as the "counsel" guaranteed by the Sixth Amendment.
<u>Id.</u>  Second, Petitioner must show that the deficient performance
prejudiced the defense.  <u>Id.</u>

          In Petitioner's objections to the report and
recommendation, Petitioner claims that his trial counsel was
ineffective for three reasons: (1) failure to preserve the issue
of whether the trial court erred in refusing to instruct the jury
on voluntary manslaughter; (2) failure to object to the trial
court's jury instructions regarding first and third degree
murder; and (3) failure to adequately cross-examine prosecution
witness Joel Colon.  The Court considers each objection in turn.

          A.   <u>Voluntary Manslaughter Jury Instruction</u>
          First, Petitioner alleges that his trial counsel was
ineffective for failing to preserve for review the issue of

-4-

whether the trial court erred in refusing to instruct the jury on
voluntary manslaughter.  Under Pennsylvania law, voluntary
manslaughter occurs under two circumstances.  First, where a
person "kills another without lawful justification if, at the
time of the killing, he is acting under a sudden and intense
provocation by the person killed."  18 Pa.C.S. § 2503(a).[1]
Second, where a person "intentionally or knowingly kills an
individual . . . if at the time of the killing he believes the
circumstances to be such that, if they existed, would justify the
killing under Chapter 5 of this title, but his belief is
unreasonable."  18 Pa.C.S. § 2503(b).[2]  "A homicide defendant is
entitled to a jury instruction on voluntary manslaughter only
'where the offense has been made an issue in the case and where
the evidence would reasonably support such a verdict.'"

---

[1]     Provocation occurs where "a reasonable person,
confronted by the same series of events, would become impassioned
to the extent that this mind would be incapable of cool
reflection." Commonwealth v. Kim, 888 A.2d 847, 853 (Pa. Super.
Ct. 2005) (quoting Commonwealth v. Galloway, 485 A.2d 776, 783
(Pa. Super. Ct. 1984)).  Such provocation must have actually
caused the accused to have experienced a state of rage or
passion. Commonwealth v. Berry, 336 A.2d 262, 264 (Pa. 1975)
(citing Commonwealth v. Drum, 336 A.2d 262, 264 (1975) ("if there
[is] provocation without passions . . . the killing will be
murder")).

[2]     "A person who commits unreasonable belief voluntary
manslaughter may hold his mistaken belief about the necessity of
self defense without being subject to the strong emotion of
sudden passion or he may be mistaken because he was the aggressor
or violated a duty to retreat." Commonwealth v. Galloway, 485
A.2d 776, 784 (Pa. Super. Ct. 1984).

Commonwealth v. Kim, 888 A.2d 847, 852-53 (Pa. Super. Ct. 2005) (quoting Commonwealth v. Thomas, 717 A.2d 468, 478 (Pa. 1998)).

Here, Petitioner argues that the voluntary manslaughter jury instruction was warranted based upon the following evidence: (1) prosecution witness Joel Colon (the victim's brother) testified that the victim had a gun in his pocket and had tried to pull it out before he was shot (Pet.'s Objs. to Report and Recommendation, p. 5); (2) several witnesses testified that the victim was larger in size than Petitioner (Id. at p. 6); (3) prosecution witness Miguel Quinones testified that the victim was unarmed, but started "blowing his chest up in [Petitioner's] face." (Id.); and (4) Dr. Funke testified that due to the bullet trajectory in the victim's body, the victim could have been "bending his knees" and may have been in a posture where he was crouched over, charging at Petitioner (Id. at p. 7).  Petitioner argues such evidence warrants a voluntary manslaughter instruction because it establishes provocation, or in the alternative, establishes an unreasonable or mistaken belief that Petitioner had to use deadly force.

The evidence offered by Petitioner fails to establish a record which "would reasonably support . . . a [voluntary manslaughter] verdict."  First, even assuming that the evidence could support an inference that the victim's actions created reasonable provocation, such evidence fails to show that

-6-

Petitioner was in fact provoked.  As the Superior Court noted, "it would not have been proper for the jury to conclude, based on the evidence presented, that [Petitioner] acted while actually in a state of rage or passion.  Rather, the jury would have been required to speculate concerning [Petitioner's] actual mental/emotional reaction to the alleged provocation." Commonwealth v. Barros, No. 2137 EDA 2005 (Pa. Super. Ct. May 11, 2006).  Petitioner fails to identify any evidence which supports the notion that he acted <u>because</u> of such provocation.  In the absence of such evidence, Petitioner is not entitled to the voluntary manslaughter instruction for the provocation purpose.

Second, Petitioner fails to identify evidence which suggests that he acted out of an unreasonable or mistaken belief that self defense was necessary.  Similar to the rejection of the provocation argument, the evidence highlighted by Petitioner does not indicate that Petitioner believed it to be necessary to use deadly force.[3] _____

---

[3]    In fact, because the events leading up to the incident occurred over the course of a day, it is even less likely that Petitioner operated under the mistaken or unreasonable belief that self defense was necessary.  However, even if he did so believe, other facts surrounding the altercation would not support a voluntary manslaughter instruction on this ground. Specifically, an altercation had occurred earlier in the day between Petitioner and the victim's brother and later that same day Petitioner came to the victim's home, armed with a gun, and knocked on the door.  On these facts, Petitioner was not free from fault in provoking or continuing the altercation which resulted in the victim's murder.  Commonwealth v. Broaster, 863

            B.    First and Third Degree Murder Jury Instruction

            Next, Petitioner contends that his trial counsel was
ineffective for failing to request a corrected jury instruction
regarding the distinction between malice for first-degree murder
and malice for third-degree murder.  Specifically, Petitioner
alleges that when the jury asked the court to define "malice, as
it pertains to first degree and third degree" murder, the judge
incorrectly instructed, "all forms of malice qualify for third
degree murder."  Petitioner argues that the judge should have
explicitly stated that malice for first degree murder requires
the intent to kill, while malice for third degree murder requires
the intent to inflict serious bodily injury or to act with
extreme indifference to the value of human life.  See
Commonwealth v. Pitts, 404 A.2d 1305, 1308 (Pa. 1979) (noting
that "murder of the third degree is a killing done with legal
malice but without specific intent to kill").  Under Petitioner's
interpretation of the trial court's instruction, the jury may
have interpreted malice for third degree murder to include the
intent to kill.

            Even assuming that Petitioner's trial counsel's failure

---

A.2d 588, 597 (Pa. Super. Ct. 2004) (noting that in order to
establish imperfect self-defense to warrant voluntary
manslaughter instruction, defendant must show that he was free
from fault in provoking or continuing the difficulty which
resulted in the slaying).

to seek correction on this instruction did constitute deficient performance to satisfy prong one of <u>Strickland</u>, Petitioner is unable to show that this inaction was prejudicial to his defense. Petitioner was convicted of third degree murder, not first degree murder.  Accordingly, even if the jury construed the instruction as Petitioner submits and interpreted malice for third degree murder to include intent to kill, this interpretation resulted in a conviction of the lesser offense (third degree murder, rather than first degree murder) and did not prejudice Petitioner.  On these facts, Petitioner cannot prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," as required by <u>Strickland</u>.

C.   <u>Failure to Cross-Examine Prosecution Witness</u>

Finally, Petitioner contends that his trial counsel was ineffective for failing to properly cross-examine prosecution witness Joel Colon regarding inconsistent statements which directly bore on Petitioner's culpability.  Specifically, Petitioner alleges that Joel Colon told the Allentown Police Department that <u>both</u> Petitioner and Miguel Quinones were shooting at Joel Colon and the victim.  However, during trial, Joel Colon testified that <u>only</u> Petitioner shot at victim.  Petitioner's trial counsel did not cross examine Colon regarding this

-9-

inconsistency.

       An analysis of the record reveals that Petitioner's
trial counsel extensively cross examined Joel Colon at trial.
For at least three reasons, the decision not to question Joel
Colon as to this specific inconsistency cannot be deemed to fall
below an objectively reasonable standard, as required by
Strickland.

       First, Colon's statement to the Allentown Police
Department (identifying both Petitioner and Miguel Quinones as
shooters) directly conflicts with Petitioner's defense that he
was not the shooter.  Although the statement names Quinones as a
shooter, it also identifies Petitioner as a shooter, thereby
contradicting Petitioner's defense, and reiterating the
accusation that Petitioner was the shooter.  Accordingly, failure
to question Colon on this statement is not objectively
unreasonable.[4]

_____

       [4]    Petitioner argues that had his trial counsel questioned
Colon regarding this statement, the jury would have been
"inform[ed]" that "Quinones may have been the person who fired
the shot that killed [the victim]."  Even if Petitioner's counsel
had questioned Colon regarding this statement, the statement
would have been classified as hearsay evidence ("a statement,
other than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth of the
matter asserted") and thus would have been inadmissible for the
truth of the matter asserted.  See Pa.R.E. 801 and 802.
Petitioner does not identify, or argue, any hearsay exception
which would have permitted the jury to consider the statement for
the truth of the matter asserted.  Accordingly, the jury could

Second, Petitioner's trial counsel effectively impeached Colon on other grounds, even in the absence of questioning Colon on the inconsistent statement in question. Specifically, the jury heard the following evidence which operated to impeach Colon's credibility and character: (1) Colon was not truthful with the police about his involvement in shooting a weapon on the night of the incident (Oct. 30, 2000, Trial Tr. Vol. I p. 228:19-24); (2) Colon was smoking marijuana the night of the incident (Id. at 222:18-25); (3) Colon had committed juvenile offenses, including receiving stolen property, and false reports to law enforcement (Id. at 83); and (4) Colon had charges pending against him for carrying a firearm, possession of controlled substances and unsworn falsification to law enforcement (Id. at 84-85).

Third, during his closing argument, Petitioner's trial counsel emphasized the impeachment evidence and challenged Colon's credibility:

> We have to look at Joel Colon's credibility. Joel Colon is a man whose been convicted of being a liar, giving false reports to police officers. This is nothing new to come into official places and give false information, for him. He's a man who has pled guilty to carrying firearms. He's a man who, from his own admission, is involved in a drug conviction, a receiving stolen property conviction. A remarkable

---

have relied upon the statement for impeachment purposes only, and not as evidence that Quinones may have been the shooter.

record for a fellow twenty-two years old.  And even
after this incident, he's busted for carrying a
firearm, possessing a firearm.  Even after this
incident.  That's the Joel Colon, the package that they
[the prosecution] want you to buy.
(Nov. 2, 2000, Trial Tr. Vol., IV. p. 163-64).

Under these circumstances, Petitioner fails satisfy

Strickland by showing that the cross examination of Joel Colon

was deficient.[5]

---

[5]      In support of his ineffective assistance of counsel
claim on this ground, Petitioner cites Bell v. Miller, 500 F.3d
149, 151 (2d Cir. 2007), where the Second Circuit found that a
habeas petitioner's trial counsel was ineffective for failure to
consult a medical expert regarding the reliability of the victim
witness who connected the petitioner to the crime.

Bell is distinguishable from this case.  In Bell, the
only evidence tying the petitioner to the crime was the victim
witness' identification of the petitioner.  Id.  The victim was
"held at gunpoint" and shot in the leg by his attacker.  Id.
Immediately after the attack, the victim, in a statement to
police, "described the attacker generically," as "a black male,
wearing a lemon colored shirt."  Id. at 151-52.  Eleven days
after the attack, after losing "half his blood" as a result of
the shooting and after regaining consciousness from an eleven day
coma, the victim identified the attacker as his neighbor.  Id. at
152.  At trial, the emergency room surgeon testified to the
victim's injuries, but petitioner's trial counsel failed to cross
examine the doctor on "the effects of trauma, blood loss and
painkillers on [the victim's] memory."  Id. at 153.

In his habeas petition, the petitioner argued that his
trial counsel was ineffective for failure to consult a medical
expert witness regarding the impact of the trauma on the victim's
reliability.  Applying Strickland, the court held that because
the reliability of the only evidence tying the petitioner to the
case (the victim's testimony), was "highly vulnerable to attack
by scientific evidence," "there [was] 'a reasonable probability'
that had trial counsel consulted with a medical expert, 'the
result of the proceeding would have been different.'"  Id. at 155.

-12-

III.  CONCLUSION

          For the reasons set forth above, Petitioner's objections to the report and recommendation will be overruled. The Report and Recommendation will be approved and adopted.

          An appropriate order follows.

---

          Unlike in <u>Bell</u>, Petitioner's trial counsel effectively cross examined Joel Colon, even in the absence of introducing Colon's inconsistent statement.  In <u>Bell</u>, petitioner's trial counsel failed to "investigate the scientific implications of [the victim's] trauma," and thus, during cross examination of prosecution witnesses, he was "handicapped" in challenging the victim witness' reliability.  <u>Id.</u> at 156.  Here, as established above, Petitioner's counsel adequately challenged Joel Colon's credibility through other inconsistent statements, the introduction of criminal offenses bearing on Colon's truthfulness, and the introduction of Colon's marijuana use at the time of the incident, bearing on Colon's perception.  Thus, failure to introduce the inconsistent statement at issue did not "handicap" Petitioner's trial counsel's cross examination of Colon, in the way that the failure to consult a medical expert impacted the petitioner's counsel's cross examination of prosecution witnesses in <u>Bell</u>.